UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TAMESHA EPPINGER, | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) No. 1:18-cv-00184-SKL |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) |
| *Defendant*. | ) |

## MEMORANDUM AND ORDER

Plaintiff Tamesha Eppinger ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party has moved for judgment [Docs. 19 & 25] and filed supporting briefs [Docs. 20 & 26]. This matter is now ripe. For the reasons stated below: (1) Plaintiff's motion for judgment on the pleadings [Doc. 19] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 25] will be **GRANTED**; and the decision of the Commissioner will be **AFFIRMED**.

**I.       ADMINISTRATIVE PROCEEDINGS**

According to the administrative record [Doc. 12 ("Tr.")], Plaintiff filed her application for DIB and SSI on May 24, 2016, alleging disability beginning May 1, 2016. Plaintiff's claims were denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held in Chattanooga, Tennessee, on November 8, 2017. On March 2, 2018, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act from the alleged onset of disability date through the date of decision. The

Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born on January 6, 1985, making her as a "younger individual" on the alleged onset date. She has a ninth-grade education, and is able to communicate in English. She has past relevant work as a packer and a poultry processor. Also, she previously worked as a babysitter/child care provider, and as a hair braider, but not to the extent required to qualify as past relevant work for social security disability purposes.

### B. Medical Records

In her Disability Report, Plaintiff alleged disability due to severe depression, a learning disorder, nerve issues, and anxiety (Tr. 214). While there is no need to summarize the medical records herein, the relevant records have been reviewed and will be discussed below as necessary.

### C. Hearing Testimony

At the hearing before the ALJ on November 8, 2017, Plaintiff and a vocational expert ("VE") testified. The Court has carefully reviewed the transcript of the testimony from the hearing (Tr. 38-57).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is

capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

**B.     The ALJ's Findings**

The ALJ found Plaintiff met the insured status requirements through December 31, 2020. At step one of the five-step process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2016, the alleged onset date. At step two, the ALJ found Plaintiff had the following severe impairments: schizoaffective disorder, generalized anxiety disorder, and panic disorder without agoraphobia. The ALJ also found Plaintiff had other conditions which were medically determinable but not severe, including obesity, hypertension, remote congestive heart failure, and substance abuse disorder; as well as alleged conditions which were not medically determinable, including schizophrenia/paranoia with hallucinations, a learning disorder, and an intellectual disorder.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairment that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following nonexertional limitations:

- She can understand, remember, carry out, and maintain concentration, persistence, and pace with customary breaks, but only for simple and low-level detailed tasks.

- She can interact occasionally with supervisors and co-workers, but should not be required to do team tasks and should not work with the public.

- She should work in an environment with only limited noise, and should avoid working with hazards.

- She can only be required to set goals on a limited basis and can only adapt to infrequent change.

(Tr. 18).

At step four, the ALJ found Plaintiff was capable of performing her past relevant work as a packer, which is classified in the Dictionary of Occupational Titles ("DOT") as an unskilled, medium exertional level occupation. In the alternative, at step five, the ALJ found Plaintiff was capable of performing other work in the national economy, including as a housekeeper, a candy sorter, and a vending machine stocker. These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act from the alleged onset date through the date of the ALJ's decision.

## IV. ANALYSIS

Plaintiff asserts this matter should be reversed and remanded for further proceedings. She argues the ALJ "improperly discredited the results of Plaintiff's valid IQ and achievement testing." [Doc. 20 at Page ID # 611]. She further argues that if the ALJ "had not improperly discounted these test results, then Plaintiff would have met the requirements of Listing 12.05(C)." [*Id.*].

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'" *Id.* (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*,

125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

    B.    **Listing 12.05**

At the third step of the sequential process, a claimant is presumed to be disabled and entitled to benefits if their impairment(s) meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. The presumption holds "regardless of age, education or work experience." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1520(d) & 416.920(d)). "In order to be found disabled based upon a listed impairment, the claimant must exhibit all the elements of the listing. It is insufficient that a claimant comes close to meeting the requirements of a listed impairment." *Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) (citations omitted).

Plaintiff argues the ALJ should have found she met the requirements of Listing 12.05C, which applies to intellectual disorders. As a corollary, she argues the ALJ "improperly discount[ed]" the results of the IQ and achievement testing administered to Plaintiff by the psychological consultative examiner ("CE"), Rebecca Ann Green, Psy. D. [Doc. 20 at Page ID # 608].

As the Commissioner points out, however, Listing 12.05C was eliminated from the Listing of Impairments, effective January 17, 2017. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 FR 66138-01, 2016 WL 5341732, at *66138, 66156 (SSA, Sept. 26, 2016). Listing 12.05 now consists of only parts A and B. The ALJ had not decided Plaintiff's claim or even held a hearing when the new Listing 12.05 became effective; accordingly, the new version applies to

the Court's review of the ALJ's decision. *See id.* at *66138 ("When the final rules become effective, we will apply them to new applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date."); *see also Cole v. Berryhill*, No. CV 18-3-HRW, 2019 WL 1179389, at *3 (E.D. Ky. Mar. 13, 2019) (citing Revised Criteria for Evaluating Mental Disorders and applying new rule to claim pending after effective date of new rule).

The Court will nevertheless consider Plaintiff's arguments under the current version of Listing 12.05, which still applies to "intellectual disorders." Part A of Listing 12.05 requires functioning too low to allow for standardized testing, which does not apply to Plaintiff. Accordingly, Part B is relevant to this case. Listing 12.05B provides that a claimant alleging an intellectual disorder must show:

> **B. Satisfied by 1, 2, and 3 (see 12.00H):**
>
> 1. Significantly subaverage general intellectual functioning evidenced by a or b:
>
>> a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>>
>> b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
>
> 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
>> a. Understand, remember, or apply information (see 12.00E1); or

      b. Interact with others (see 12.00E2); or

      c. Concentrate, persist, or maintain pace (see 12.00E3); or

      d. Adapt or manage oneself (see 12.00E4); and

    3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05.

### 1. Four Adaptive Functioning Areas – 12.05B(2)

Looking at subpart (2) first, the ALJ found[1] Plaintiff had only a moderate limitation in each of the four areas described: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself (Tr. 17-18). Plaintiff does not challenge the ALJ's findings concerning these functional areas, which alone disqualify her from an award of benefits based on Listing 12.05B. *See Cole*, 2019 WL 1179389, at *3 ("The ALJ specifically considered each of the four areas of mental functioning and did not find Plaintiff to have any marked or extreme limitations. Instead, the record provides substantial evidence that Plaintiff was moderately limited . . . . Plaintiff ha[s] not alleged that these findings lack support in substantial evidence and has thus waived any challenge he might have made to them." (citing *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005)).

---

[1] The ALJ did not expressly consider Listing 12.05; however, the ALJ addressed each of the subparts in her decision, thereby at least implicitly finding Plaintiff did not qualify.

Furthermore, the Court finds the ALJ's findings on the four functional areas are supported by substantial evidence in the record, including the opinions of the State agency non-examining psychological consultants that Plaintiff had no more than moderate limitations, Plaintiff's past long-term work as a warehouse "packer," and Plaintiff's ability to "follow written instructions well enough and for long enough to complete her Function Report." (Tr. 30-31, 62-63, 91-93, 236, 486-87). The ALJ also properly cited treatment notes from Plaintiff's treatment providers, "who encouraged daily physical exercise, encouraged her efforts to return to work, perform activities of daily living; care for her daughter; take her medications; identify, and clearly articulate, changes in her mental health; and, with medication compliance, practice good coping skills and manage her moods." (Tr. 31).

### 2. General Intellectual Functioning – 12.05B(1)

As mentioned, the ALJ's findings concerning the four functional areas listed in subpart 2 alone prevent Plaintiff from qualifying for benefits under Listing 12.05B. The Court will nevertheless address Plaintiff's argument that the ALJ improperly discounted the results of the IQ and achievement tests administered to Plaintiff by the CE, Dr. Green, on September 22, 2016.

Dr. Green found Plaintiff had a full scale IQ of 45, with a verbal comprehension index of 54, a perceptual reasoning index of 50, a working memory index of 55, and a processing speed index of 50. Dr. Green wrote that Plaintiff's 45 full scale IQ score "is thought to be an accurate representation of her intellectual functioning at this time, as she seemed to be making a good effort, as evidenced by her thoughtfulness." (Tr. 445). Nevertheless, Dr. Green noted Plaintiff's "performance may have been negatively impacted by her distraught mood." (Tr. 445). On the wide range achievement test, Dr. Green assigned Plaintiff a score of 55 on word reading and on

math, both of which are "only as good as or better than 0.1% of her same age peers." (Tr. 445). As with the IQ testing, Dr. Green thought the scores accurately reflected Plaintiff's abilities, noting Plaintiff "put forth a good effort and was responsive on all subtests," but that Plaintiff's "performance may have been negatively impacted by her distraught mood." (Tr. 445). As pertinent, Dr. Green further wrote Plaintiff was "polite, friendly, and mild mannered," but she "presented as being distraught because her three youngest children were taken from her and she does not have visitation." (Tr. 446).

>Regarding these test results, the ALJ wrote:

>>Although [Dr. Green] indicated that the claimant's test results were reliable, and expressed the opinion she was severely impaired in her ability to concentrate, and understand and remember instructions, [Dr. Green] did not diagnose a cognitive disorder. [Dr. Green] explicitly found that the IQ score was affected by emotional factors. However, the record shows that the claimant's presentation at this single examination did not accurately represent her persistent functioning. The claimant's statements [to her case manager after the consultative exam] showed that she was falling asleep, refused to take the math test, and was influenced by acute exacerbations of mood problems by her daughter's recent diagnosis with [a health issue]. Her activities show significantly higher cognitive functioning. I give this opinion limited weight.

(Tr. 31). The ALJ also noted Plaintiff's "mood was better within 6 days" of the consultative exam, when Plaintiff reported she was compliant with her medication, and that "things were going to be okay despite her daughter's condition." (Tr. 29).

In her brief, the Commissioner points out that under new rules concerning mental disorders, "[o]nly qualified specialists, Federal and State agency medical and psychological consultants, and other contracted medical and psychological experts may conclude that your obtained IQ score(s) is not an accurate reflection of your general intellectual functioning." 20 C.F.R. Part 404, Subpart

11

P, Appendix 1, Listing § 12.00(H)(2)(d). This rule provides that such a conclusion "must be well supported by appropriate clinical and laboratory diagnostic techniques and must be based on relevant evidence in the case record," including the "data obtained in testing," a claimant's developmental history, information about a claimant functions on a daily basis, and clinical observations "made during the testing period." *Id.*

Consistent with this rule, the ALJ discussed how Dorothy Tucker, Ph.D., the State agency psychological consultant who first reviewed Plaintiff's claim, assigned no weight to Dr. Green's opinion concerning Plaintiff's IQ (Tr. 24). Dr. Tucker wrote that the full scale IQ score of 45 was inconsistent with Plaintiff's ability to spell "world" backward and name a current event, which were both demonstrated during the test. Dr. Tucker also found the score was "certainly not consistent" with Plaintiff's past work experience as a packer, or with Plaintiff's past presentation at appointments with treating providers (Tr. 63). On reconsideration of Plaintiff's claim at the State agency level, Robert Hodes, Ph.D., another State agency psychological consultant, affirmed Dr. Tucker's opinion. The ALJ assigned great weight to these opinions, finding them well-supported by the record as a whole (Tr. 31).

In support of her decision to credit the State agency psychological consultants, the ALJ pointed out that Plaintiff's "psychiatrists and other mental health treatment providers have neither diagnosed cognitive or learning disorders nor noted any related clinical deficits." (Tr. 30). *Cf. Gattah v. Comm'r of Soc. Sec.*, No. 17-cv-14152, 2019 WL 320636, at *5 (E.D. Mich. Jan. 2, 2019) (ALJ erred in rejecting IQ score where the record contained "multiple diagnoses of intellectual disability, intellectual delay, and cognitive/mental impairment in the record"). The ALJ further noted Plaintiff was able to complete her Function Report, was articulate with her

providers about her symptoms and treatments, lived with her oldest daughter, could discuss her legal issues with her case manager, had a driver's license at some point, and communicated daily on her phone and Facebook. *See Conwell v. Comm'r of Soc. Sec.*, No. 1:14-cv-810, 2015 WL 9872213, at *7 (S.D. Ohio Dec. 2, 2015) (awarding benefits where claimant never had a driver's license, lived in halfway houses and homeless shelters, and school records "reflect that he was in special education classes throughout his school years, with significant, well-documented, and persistent deficits in multiple academic and social areas"). The same reasoning applies to the achievement test scores, which ranked Plaintiff as lower performing than 99.9% of her peers.

Plaintiff argues the ALJ's "reasoning is insufficient to support the decision to discard the IQ testing" [Doc. 20 at Page ID # 609]. But Plaintiff overlooks the fact that the ALJ relied on the opinions of the State agency psychological consultants. These consultants have authority to "reject" IQ scores reported by consultative examiners, so long as they cite relevant information in the record to support such a determination. In this case, they did just that.

As part of her argument concerning the ALJ's consideration of her IQ score, Plaintiff further contends the record contains "other key evidence that points to an intellectual disability." [Doc. 20 at Page ID # 609]. She cites her reported difficulty understanding and remembering instructions in her past jobs and during the consultative exam, as well as the fact that she dropped out of school in the ninth grade and never returned. The ALJ expressly considered Plaintiff's alleged workplace difficulties, but found them only partially credible in light of Plaintiff's extended employment, from 2004-2015, as a packer (Tr. 30, 236). This finding by the ALJ is supported by Dr. Tucker's opinion that a 45 IQ is "certainly not consistent" with Plaintiff's "prior work for several years as a packer." (Tr. 63). Dr. Tucker further noted a 45 IQ is inconsistent with

13

Plaintiff's ability to spell the word "world" backwards and "give a current event," during the consultative exam (Tr. 63). Regarding her educational record, Plaintiff informed Dr. Green she dropped out because she "did not understand anything that she was being taught." (Tr. 443). The ALJ noted, however, that Plaintiff had progressed normally in regular education classes until ninth grade, which was the same year she gave birth to her first child. This is supported by a note in a 2006 psychiatric assessment form, stating "Edu . . . 9th grade and quit [illegible] pregnancy" (Tr. 393). The ALJ noted there was no evidence of underachievement in school and no evidence of a cognitive or learning deficit diagnosed before she dropped out (Tr. 30).

Finally, to accommodate Plaintiff's other, documented mental health issues, the ALJ limited Plaintiff to simple and low-level detailed tasks with no interaction with the public, no team work, and no hazards; only infrequent changes and interactions with supervisors and coworkers; only limited noise; and only limited required goals. A claimant's RFC is the most the claimant can do, not the least, despite his or her impairments. 20 C.F.R. § 404.1545(a)(1). And, Plaintiff has the burden of showing the severity of her conditions and their limiting effect on her ability to perform work functions. *See Watters v. Comm'r of Soc. Sec.*, 530 F. App'x 419, 425 (6th Cir. 2013) ("[T]his court has consistently affirmed that the claimant bears the burden of producing sufficient evidence to show the existence of a disability." (citing *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012)) (other citation omitted)).

While Plaintiff has pointed to some evidence in the records which tends to support her position that she suffers from an "intellectual disorder," she does not point to any evidence which

the ALJ did not consider or which contradicts the ALJ's factual findings.[2] The Sixth Circuit has consistently upheld the discretion vested in ALJs to weigh conflicting record evidence in assessing disability status. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). Plaintiff has not "persuasively shown that the ALJ erred in conducting [the] difficult task" of weighing the record evidence, either at step three when considering the listings or in determining Plaintiff's RFC. *Id.*

### 3. Onset Before Age 22 – 12.05B(3)

Plaintiff has failed to show harmful error in the ALJ's assessment of Plaintiff's intellectual functioning, including her IQ score (subpart 1 of Listing 12.05B), or in the ALJ's assessment of Plaintiff's ability to function (the four areas listed in subpart 2 of Listing 12.05B). Although these deficits in Plaintiff's case alone preclude her from qualifying for benefits under Listing 12.05B, the Court will nevertheless address Plaintiff's last argument, that the ALJ erred in finding the record did not demonstrate onset of intellectual disorder before age 22.

To establish onset before age 22, the Commissioner requires evidence about the claimant's "current intellectual and adaptive functioning and the history of [the] disorder that supports the conclusion that the disorder began before [the claimant] attained age 22." *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(H) ("How do we document and evaluate intellectual disorder under

---

[2] The Court notes that at one point, the ALJ states that Dr. Green "explicitly found that the IQ score was affected by emotional factors." (Tr. 31). At another point, the ALJ wrote that "Dr. Green expressed the opinion that the low IQ score was likely due to the claimant's mood." (Tr. 30). Dr. Green actually only wrote that Plaintiff scores "**may** have been negatively impacted by her distraught mood." (Tr. 445 (emphasis added)). Ultimately, Dr. Green concluded Plaintiff's IQ and achievement test scores accurately represent Plaintiff's ability. Nevertheless, the Court finds this error to be harmless, in light of the fact that the ALJ assigned Dr. Green's opinion "limited weight." (Tr. 31).

15

12.05?"). Examples of evidence ALJs may rely on to make this finding include: "tests of intelligence or adaptive functioning," school records showing special education services or an Individualized Education Plan, reports of academic performance and functioning at school, medical treatment records, interviews and statements from employers or group home supervisors, and statements from people who knew the claimant before they turned 22. *Id.* § 12.00(H)(4) ("Establishing that the disorder began before age 22.").

Plaintiff argues she "has evidence of adaptive skills limitations prior to age 22." [Doc. 20 at Page ID # 610]. But the only pieces of evidence she cites are her own statements to the consultative examiner that (1) she dropped out of school in the 9th grade "because she did not understand anything that she was being taught" (Tr. 443); and (2) she was terminated from a job because "she had difficulty reading directions and could not remember what she was supposed to do." (Tr. 444). While Plaintiff is not required to produce an IQ score obtained prior to age 22 in order to satisfy this prong, *see West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007) (citing *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 873 (6th Cir. 2003)), the Court finds Plaintiff's statements to Dr. Green, which are addressed above, are not sufficient. As discussed, Plaintiff was not enrolled in special education classes, the record contains no evidence of behavioral or academic issues in school, and her dropping out of school coincides with the birth of her first child. Further, while she had trouble with co-workers at one job, she worked for long periods of time at others, and the ALJ limited her to jobs requiring no teamwork and very little interaction with other people. The Court notes Plaintiff did receive disability benefits for a few years before she turned 18, as the ALJ discusses (Tr. 19). However, this was due to a "psychological crisis," during which she attempted suicide and was subsequently diagnosed with

depression (Tr. 19). Plaintiff does not contend her prior benefits were awarded due to an intellectual disorder.

The record includes one assessment from 2006, when Plaintiff was 21 years old, which the ALJ addressed at length (Tr. 19, 389-94). The assessment reflects that, at the time, Plaintiff had three children and planned to obtain a GED as soon as her youngest turned one year old. She had stopped taking her medication, had not worked for several months, and was experiencing depression. Nevertheless, the provider who performed the assessment wrote that Plaintiff's housing was adequate and she was capable of taking care of herself and her three children. They also wrote that while Plaintiff was depressed and anxious, she had a good memory, good judgment, normal speech, and was appropriately oriented in place and time (Tr. 390-91). The form indicates Plaintiff's intellect was found to be within normal limits and her insight/judgment was found to be adequate (Tr. 393).

There is no doubt that at times Plaintiff experienced serious psychological distress during her youth which carried over into her adulthood; however, Plaintiff has not cited any evidence to show that she had significantly subaverage intellectual functioning before age 22. Respectfully, Plaintiff has failed to show any error with the ALJ's determination that she did not meet the requirements of 12.05B(3).

## V. CONCLUSION

For the reasons stated here, it is **ORDERED** that:

1) Plaintiff's motion for judgment on the pleadings [Doc. 19] is **DENIED**;

2) The Commissioner's motion for summary judgment [Doc. 25] is **GRANTED**; and

3) The Commissioner's decision denying benefits is **AFFIRMED**.

SO ORDERED.

ENTER:

*s/ Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE